**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DOUGLAS OPHEIM,

                Plaintiff,

vs.

STANDARD INSURANCE CO.,

                Defendant/Third-Party
                Plaintiff,

vs.

JAMES L. STEVENS,

                Third-Party Defendant.

No. C 16-4145-MWB

**OPINION AND ORDER ON THE
MERITS**

_____

**TABLE OF CONTENTS**

**I.   INTRODUCTION**.................................................................. **3**
   **A.   Factual Background** .................................................... **3**
   **B.   Procedural Background** ............................................... **8**

**II.  LEGAL ANALYSIS** ........................................................... **9**
   **A.   Opheim's Claims**....................................................... **9**
       **1.   Opheim's denial of benefits claim**...................... **10**
          **a.   Arguments of the parties** ...................... **10**
          **b.   Applicable standards** ........................... **12**
             **i.   Standard of review**...................... **12**
             **ii.   The "plan documents rule"**............ **12**
          **c.   Analysis** ......................................... **16**
       **2.   Opheim's equitable relief claim** ....................... **19**
       **3.   Attorney fees** ............................................ **19**
          **a.   Arguments of the parties** ...................... **19**

        b.      Applicable standards .............................................. 20
        c.      Analysis ............................................................ 22
    B.      Standard's Third-Party Claim................................. 24
        1.      Standard's claim for a constructive trust ............................ 24
        a.      Arguments of the parties ...................................... 24
        b.      Applicable standards ........................................... 25
        c.      Analysis .......................................................... 28
    2.      Attorney fees ............................................................ 29
III.    CONCLUSION .................................................................. 30

In this ERISA[1] action, plaintiff Douglas Opheim seeks payment of life insurance benefits originally paid to him, then demanded back, by defendant Standard Insurance Company (Standard), because Standard refused to pay him the benefits again when he later discovered a designation naming him as the beneficiary.  In the interim, Standard had paid those benefits to third-party defendant James Stevens.  In a third-party claim, Standard asserts that, if it is required to pay benefits to Opheim, it is entitled to a constructive trust over the benefits it has paid to Stevens.

---

[1] Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*

# I. INTRODUCTION

## A. Factual Background

Unless indicated otherwise, the parties do not appear to dispute the following facts.

Plaintiff's decedent Lisa K. Opheim (formerly Lisa Nichols) was employed by Peoples Bank of Rock Valley, Iowa, as a trust administration/operations assistant. One of her employment benefits was life insurance coverage pursuant to a group life insurance plan, governed by ERISA, under which Peoples Bank was a participating employer, the policy holder was Iowa Bankers Insurance and Services, Inc. (Iowa Bankers), of Johnston, Iowa, and Standard was the insurer and plan administrator. The plan provided for basic accidental death and dismemberment (ADD) benefits in the total face amount of $115,000, basic term life insurance benefits in the face amount of $65,000, and additional term life insurance benefits in the face amount of $65,000. In her original application for these benefits, dated October 15, 2009, Lisa Opheim designated plaintiff Douglas Opheim (Opheim) as the primary beneficiary of her ADD insurance benefits and basic group term life insurance benefits, but designated James Stevens, her father, as the primary beneficiary of her additional term life insurance benefits. Appendix (docket no. 14) at 105.

Subsequently, on November 16, 2010, Lisa executed a change of beneficiary form designating Opheim as the beneficiary of her additional term life insurance benefits, indicating an effective date of November 22, 2010, the date of her marriage to Opheim. Appendix at 132. The plan provided, in pertinent part, as follows:

> Naming A Beneficiary
>
> Beneficiary means a person you name to receive death benefits.
>
> You may name one or more Beneficiaries. Two or more surviving Beneficiaries will share equally, unless you

specify otherwise. You may name or change Beneficiaries at any time without the consent of a Beneficiary.

Your Beneficiary designation must be the same for Life Insurance and AD&D Insurance death benefits. Your Beneficiary designations for Life Insurance and your Supplemental Life Insurance may be different.

You must name or change Beneficiaries in writing. Your designation:

1.    Must be dated and signed by you;

2.    Must be delivered to the Policyholder or Employer during your lifetime;

3.    Must relate to insurance provided under the Group Policy; and

4.    Will take effect on the date it is delivered to the Policyholder or Employer.

Appendix at 71. Peoples Bank had a copy of the November 16, 2010, designation form in its files, which showed a hand-written note in the upper righthand corner by Gary De Jager, the human resources director for Peoples Bank, indicating that the form had been mailed to Iowa Bankers on December 1, 2010. *Id*. at 106. Standard did not find a copy of the November 16, 2010, designation in its file, however.

Lisa Opheim died in a car accident on or about October 1, 2014. On or about October 10, 2014, Peoples Bank submitted claim information for her life insurance benefits, signed by Mr. De Jager, to Standard and/or Iowa Bankers. *Id*. at 223. That claim identified the "name of Beneficiary" as Opheim and his relationship to Lisa Opheim as "Spouse." *Id*. On November 21, 2014, Standard paid Opheim $130,000 plus interest in benefits for the basic term life insurance and the additional term life insurance. *Id*. at 108 (transaction summary report). On January 15, 2015, Standard also paid Opheim $115,000 in ADD benefits. *Id*.

4

On or about March 2, 2015, however, Kim Smothers, a Life Benefits Analyst for Standard, called Opheim, and that same day sent him a letter, informing him that he had been paid the $65,000 in additional life insurance benefits in error. Appendix at 136. Ms. Smothers's explanation for the mistake, in her letter, was the following:

> Unfortunately, [the October 15, 2009,] designation was overlooked when we initially reviewed the claim, likely because we were focused on the change form Mrs. Opheim completed on October 31, 2013, adding Dependents Life and naming her step-children as beneficiaries. As a result, all the benefits were paid to you, including the $65,000 Additional Life, which should have actually been paid to Mr. Stevens.

Appendix at 136. In her letter, Ms. Smothers "ask[ed] that [Opheim] send us a $65,000 check payable to Standard Insurance Company," and stated that Standard would then send a check to Stevens. *Id.* Opheim sent Standard a check dated March 14, 2015, in the amount of $65,000. *Id.* at 152. Standard received the check on March 24, 2015, then sent Stevens a $65,000 check enclosed in correspondence dated April 6, 2015. *Id.* at 141.

Subsequently, on November 24, 2015, Opheim sent Ms. Smothers the following email:

> Dear Ms. Smothers,
>
> In your letter dated 3/2/15, attached, you indicated that Lisa's father, James Stevens, was beneficiary for Lisa's Additional Life Benefits. You referenced her Beneficiary Designation dated 10/15/09. I accepted that and assumed there was some mistake on Lisa's and my end. I assumed that, somewhere, Lisa and I hadn't made the proper indications to name me as the beneficiary of all her insurance policies.
>
> I offer, however, a beneficiary change form dated 11/16/10, also attached, that, as far as I can tell, does name me as the primary beneficiary effective 11/22/10 (the date we were

married) for her Group Term Life (GTL) and Additional Life
(ADDL) policies. I ran across this form last weekend while
cleaning out some files. Is this the correct form for your
company? Am I interpreting the form correctly? ADDL
stands for Additional Life, correct or not?

Please review this and get back to me either by email or phone
at [redacted]. Thank you.

Appendix at 118.

As mentioned, above, Peoples Bank also had a copy of the November 16, 2010,
designation form in its files. Mr. De Jager wrote a letter, dated December 11, 2015, to
Ms. Smothers, *id.* at 131, which Opheim attached to an email to Ms. Smothers on
December 11, 2015. *Id.* at 130. In his letter, Mr. De Jager explained that he had found
a copy of the November 16, 2010, designation in Lisa Opheim's employee file with
Peoples Bank, and that, based on his handwritten note at the top righthand corner of the
designation form, he stated that he had mailed a copy of the form to Iowa Bankers on
December 1, 2010. *Id.* at 131; *see also id.* at 106 (copy of designation with Mr. De
Jager's notation). Nevertheless, Standard points out that there is no document in the
Administrative Record memorializing actual transmittal of the November 16, 2010,
designation to the policyholder, and that Standard was unaware of the existence of that
designation until Opheim sent his email on November 24, 2015.

Brandy Sears, a Senior Life Benefits Analyst for Standard, reviewed the situation
and, on December 21, 2015, emailed Ms. Smothers, in pertinent part as follows:

Hi Kim-

I took a look at this claim and also reviewed it with
Hector this morning. Here is my recommendation for a plan
of action:

1.      We need to contact the group and find out why
        we didn't receive this designation with the
        claim? Normally we would receive all

6

designations with the claim and we need to confirm why this didn't happen here. We want to resolve any break down in the process or eliminate an issue that could arise again in the future.

2. The account manager and NAC will need to be involved at this point. The reason behind this is that we paid the claim in good faith based on the information that we received with the claim. Typically in this situation, where we receive an updated designation after payment on the claim, we would attempt to get the funds back. However, since we paid the claim in good faith based on the information we had in the file at the time of claim we would advise the "updated beneficiary" that they would need to work it out with the "prior beneficiary". **NOTE**: This is not a typical situation based on our prior recovery of funds and taking this approach may not be appropriate.

3. [Redacted].

4. We may need to look at making a business decision on this claim. The problem here is more that we paid out the claim correctly (based on the updated designation), had money returned, and then paid out again (to the wrong person based on the updated designation). Due to the claim circumstances this may be the appropriate plan of action, however, we will want to do the above 3 steps first before we get to this point.

Appendix at 126.

On January 29, 2016, Ms. Smothers sent Opheim a letter that, *inter alia*, acknowledged that the letter from Peoples Bank "confirms that the November 16, 2010, beneficiary designation form was received in their office and mailed to the Policyholder,

Iowa Bankers Benefit Plan Trust, on December 1, 2010." *Id.* at 112. Ms. Smothers's letter then stated, "Unfortunately, this form was not mailed to The Standard with Mrs. Opheim's life insurance claim." *Id.* In the remainder of her letter, Ms. Smothers set out Standard's resolution of the matter, as far as it was concerned:

> At this time The Standard is faced with competing claims to this benefit, between you and Mr. Stevens. As an impartial stakeholder we are not required to determine who among competing claimants has a valid right to these funds. The Standard paid this benefit to Mr. Stevens in good faith, based on the information we received.
>
> Therefore, we ask that you and Mr. Stevens come to some mutually agreeable resolution. Please contact us if you need assistance. Otherwise, we will consider this matter closed.

Appendix at 112-13.


## B.    Procedural Background

On December 1, 2016, ten months after receiving Ms. Smothers's letter that Standard considered the matter "closed," Opheim filed a petition in the Iowa District Court for Sioux County against Standard asserting claims of breach of contract and equitable fraud.[2] On December 30, 2016, Standard removed this action to this federal court on the ground that this court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), because the action is controlled by ERISA. On January 13, 2017, Standard filed its Answer And Third-Party Complaint, denying Opheim's claims, asserting various defenses, and asserting third-party claims against

---

[2] In the "Wherefore" clause of his state court petition, Opheim requested entry of judgment against Standard in the amount of $65,000 plus interest, "costs and attorney fees allowed by law," and for any other relief as the court deems just and equitable. State Court Petition (docket no. 3), 6.

Stevens for a constructive trust and unjust enrichment. Stevens filed his Answer to the Third-Party Complaint on January 29, 2017, denying Standard's claims and asserting various affirmative defenses.

On March 21, 2017, after conferring with the parties, Chief United States Magistrate Judge C.J. Williams entered a Scheduling Order For A Claim Review Case Filed Under ERISA. Notwithstanding Opheim's and Stevens's jury demands in their pleadings, the parties apparently agreed to submit all claims for disposition by the court pursuant to a briefing schedule. Consequently, on June 1, 2017, Standard filed a Redacted Administrative Record; on July 31, 2017, Opheim filed his Brief In Support Of Claim; on September 12, 2017, Standard filed its Memorandum Of Law In Opposition To Plaintiff's Claim And In Support Of Its Dismissal, including arguments for a constructive trust on the benefits paid to Stevens, if the court determines that Standard wrongfully paid the benefits in question to Stevens; on October 12, 2017, Stevens filed his Memorandum Of Law In Opposition To [Third-Party] Plaintiff's Claim; and on November 1, 2017, Opheim filed his Reply Brief.

This case is now ripe for decision on the merits on the parties' written submissions.

## II. LEGAL ANALYSIS

### A. Opheim's Claims

Opheim's claims against Standard, as pleaded, are for breach of contract, based on Standard's failure to pay him the additional term life insurance benefits, and equitable fraud, for misrepresenting facts concerning the rightful beneficiary of those benefits. The parties do not dispute that the life insurance benefits at issue are pursuant to a plan

governed by ERISA. Under the preemptive force of ERISA, Opheim's claims are for denial of benefits and equitable relief.[3] I will consider those claims in turn.

### 1. *Opheim's denial of benefits claim*

#### a. *Arguments of the parties*

Opheim argues that, while regulated, ERISA plans are governed by established principles of contract and trust law. For example, he argues that a contract may benefit and give rights to third parties. He argues that he is obviously the intended beneficiary of Lisa Opheim's life insurance, because the November 16, 2010, designation expressly names him as the intended beneficiary of all three kinds of life insurance. He points out that Standard originally paid him the benefits at issue, then demanded repayment. He

---

[3] As the Eighth Circuit Court of Appeals has explained,

> "[T]he ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.*

*Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014) (*Ibson I*). Somewhat more specifically, "[29 U.S.C. §] 1132(a)(1)(B) provides a cause of action for an ERISA participant or beneficiary . . . to recover benefits due to *him* under the terms of his plan." *Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 387–88 (8th Cir. 2017) (*Ibson II*) (quoting § 1132(a)(1)(B) with emphasis added by the *Ibson II* court). Section 1132(a)(3)(B) "allows for *appropriate equitable relief* to redress violations . . . of ERISA or the terms of the plan." *Id.* at 388 (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), with emphasis by the *Amara* court).

contends that, when Standard was presented with the November 16, 2010, designation, Standard (through Brandy Sears) admitted that the additional term life insurance benefits were paid to the wrong person when they were paid to Stevens, but Standard nevertheless still refuses to correct its mistake. Opheim argues that Standard's contention that it paid Stevens the benefits "in good faith" does not change the fact that the plan required that the benefits be paid to him.

Standard argues that it did not abuse its discretion under the plan, because its decision to demand repayment of the benefits from Opheim and then to pay the benefits to Stevens complied with the "plan documents rule," which requires plan administrators to manage ERISA plans in accordance with the documents and instruments governing them. To put it another way, Standard argues that the "plan documents rule" required it to look solely at the directives in the plan documents, not at the intent of the parties, in determining how to disburse benefits. Standard contends that it is undisputed that it did not have a copy of the November 16, 2010, designation in its files at the time it made its benefits decision or that the latest beneficiary designation in its file was the October 15, 2009, designation naming Stevens as the beneficiary of the benefits at issue. Thus, Standard argues that it was required to pay the benefits to Stevens.

In reply, Opheim argues that this case is distinguishable from those on which Standard relies. He also argues that, while Lisa Opheim met the requirements of the plan for an effective change of beneficiary by submitting the November 16, 2010, beneficiary designation to Peoples Bank, Standard breached the requirements of the plan by denying his claim to be repaid the benefits after he claimed them on the basis of that beneficiary designation. He contends that, when Standard denied that claim, Standard neither referenced the parts of the plan upon which the decision was based, nor notified him of his right to have that decision reviewed, as Standard was required to do under ERISA. Instead, he argues that Standard simply tried to wash its hands of the matter.

### b.    *Applicable standards*

### i.    *Standard of review*

Where the claim at issue is denial of ERISA benefits,

> A plan administrator's denial of ERISA benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan grants such discretionary authority, then the plan administrator's decision is reviewed for abuse of discretion. *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir. 2005) (en banc).

*Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014), *as corrected* (July 15, 2014). Standard contends that the plan grants it the necessary discretionary authority, so that review, here, is for abuse of discretion. *See, e.g.,* Appendix at 73 (plan provision stating Standard's discretionary authority). The other parties do not argue otherwise. Therefore, review is for abuse of discretion in this case.

Review for abuse of discretion "focuses on whether the administrator's decision was 'supported by . . . substantial evidence in the materials considered by the administrator.'" *Waldoch*, 757 F.3d at 830 (quoting *King*, 414 F.3d at 999). Thus, "[g]enerally 'a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider post hoc rationales.'" *Id*. at 829-30 (again quoting *King*, 414 F.3d at 999 (internal quotation marks and citations omitted)); *see also id.* (noting an exception when evidence is admitted for the limited purpose of determining the proper standard of review).

### ii.    *The "plan documents rule"*

The Eighth Circuit Court of Appeals has explained that the "plan documents rule," on which Standard relies, was set out by the Supreme Court in *Kennedy v. Plan*

*Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009). *Matschiner v. Hartford Life and Acc. Ins. Co.*, 622 F.3d 885, 887 (8th Cir. 2010). The appellate court explained,

> In *Kennedy*, a unanimous Supreme Court resolved a conflict in the circuits on th[e] issue [of whether common law rights under a divorce decree or a beneficiary designation controlled]. Consistent with its prior decision in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147–48, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), the Court held that ERISA's statutory mandates that a plan "specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the plan administrator act "in accordance with the documents and instruments" of the plan, § 1104(a)(1)(D), foreclose any federal common law inquiry into whether a properly designated beneficiary's divorce decree waived his or her entitlement to plan benefits. 129 S.Ct. at 875–77.
>
> . . . [T]he Court's reasons for applying the plan documents rule, rather than federal common law "inquiries into nice expressions of intent" [was that] a "straightforward rule of hewing to the directives of the plan documents" has the virtues of "simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." 129 S.Ct. at 875–76 (quotation omitted).

*Matschiner*, 622 F.3d at 887. In *Matschiner*, the court concluded that *Kennedy's* "plan documents rule" applies to both employee pension benefit plans and welfare benefit plans, such as group life insurance plans. *Id.*

In *Matschiner*, the court considered the claims of the daughters of the deceased plan participant that the insurer had paid the deceased plan participant's ex-husband too large a share of the death benefit under an ERISA life insurance plan. *Id.* at 886. The court first summarized the facts, as follows:

In 1991, RoJane Lewis obtained life insurance under a group policy issued by Hartford Life and Accident Insurance Company to her employer, Inacom Corporation. She submitted a beneficiary designation form granting sixty percent of the death benefit to her husband, Alan Lewis, and twenty percent to each of her daughters, Katherine and Kristina Matschiner. RoJane died in April 2005. When Hartford located the designated beneficiaries in June 2007, Katherine Matschiner advised that Kristina had a more recent beneficiary designation and that Alan Lewis intended to disclaim his share of the $122,000 death benefit. Hartford contacted Alan, who stated that he wished to collect his share of the death benefit and submitted a signed claim form. The daughters also submitted claim forms, and Kristina faxed Hartford a copy of a November 2000 divorce decree in which a Nebraska state court awarded Alan and RoJane, individually, the "cash values of any life insurance policies currently owned by him or her or the cash proceeds … to be received therefrom." When neither daughter submitted a more recent beneficiary designation, Hartford paid the policy benefits in accordance with the 1991 designation in its files.

*Matschiner*, 622 F.3d at 886. More specifically, still,

Hartford learned of RoJane's death in 2005 and began an extensive search for the designated beneficiaries. When Katherine responded in June 2007 and advised that her sister had a later beneficiary designation, Hartford asked that it be submitted. Instead, Kristina faxed a copy of the divorce decree. Hartford's attempt to obtain more information from defunct [former employer of the deceased] went unanswered. After Alan submitted a claim for his share of the death benefit, he complained to the Nebraska Department of Insurance when Hartford did not promptly pay the claim. The Department demanded that Hartford explain the delay. Hartford then paid the death benefit in accordance with the 1991 beneficiary designation form, the only designation in its files. After these

14

> payments, the Matschiners' attorney sent Hartford a
> beneficiary designation signed by RoJane in December 1997
> granting forty percent of the life insurance benefit to Alan and
> thirty percent to each daughter. This document was found in
> RoJane's "personal files."

*Matschiner*, 622 F.3d at 886–87.

The court in *Matschiner* concluded that the "plan documents rule" was applicable, and required payment of the ex-husband's percentage under the designation in the files, not as stated in the divorce decree. *Id*. at 887. The court then addressed the district court's alternative holding that the insurer abused its discretion when it paid the death benefit according to the 1991 designation, six weeks after Katherine Matschiner advised that Kristina had a later designation. *Id*. The appellate court also rejected that alternative holding, as follows:

> In applying th[e] plan documents, the 2000 divorce
> decree was irrelevant because RoJane never signed and
> submitted a beneficiary designation form eliminating Alan as
> a designated beneficiary, in accordance with that decree, to
> the Policyholder (Inacom) or to Hartford [as required by the
> plan documents]. The record does include a 1997 designation
> reducing Alan's share from sixty to forty percent of the death
> benefit. Though in writing and apparently in proper form,
> there is no evidence this designation was submitted to the
> Policyholder, or directly to Hartford, before the death benefit
> was paid [as required by the plan documents]. When
> Katherine Matschiner advised Hartford of a later designation
> in June 2007, Hartford asked for a copy. If the Matschiners
> had complied before the death benefit was paid, Hartford
> might well have been obliged to pay in accordance with this
> later designation because the Policyholder was out of business
> and the policy otherwise terminated. But the Matschiners did
> not comply, and Hartford promptly paid the claims submitted
> by the three beneficiaries in accordance with the only

designation in its files, as the policy required. *The policy expressly provided that Hartford is not liable for further payment of amounts paid under an earlier designation before it received a later designation.*

In these circumstances, applying the plan documents rule, summary judgment in favor of Hartford is clearly warranted. As the Supreme Court explained, "[t]he plan provided an easy way for [the Matschiners] to change the designation, but for whatever reason [they] did not.... The plan administrator therefore did exactly what [29 U.S.C.] § 1104(a)(1)(D) required: the documents control...." *Kennedy*, 129 S.Ct. at 877 (quotation omitted).

*Matschiner*, 622 F.3d at 889 (emphasis added).

### c.    *Analysis*

There is no doubt that the "plan documents rule" applies to the group life insurance benefits plan at issue here, *see id.* at 887, but application of that rule does not lead to the result Standard asserts. Rather, the "plan documents rule" demonstrates that Standard abused its discretion in refusing to pay Opheim the benefits he was due.

First, the circumstances differ in all pertinent respects from those presented in *Matschiner*. Lisa Opheim *did* sign a beneficiary designation form eliminating Stevens as a designated beneficiary of the additional term life insurance benefits and replacing him with Opheim and *did* submit it to her *employer*, Peoples Bank, as required by the plan documents in this case for the designation to become effective. *See* Appendix at 71 (stating that the designation would "take effect on the date it is delivered to the Policyholder or Employer"). This is exactly the opposite of the situation in *Matschiner*, where the plan participant never submitted a signed designation as required by the plan documents. 622 F.3d at 889. As in *Matschiner*, the record, here, does include the November 16, 2010, designation changing the beneficiary to Opheim and that new designation was in writing and clearly in proper form, but unlike the situation in

*Matschiner*, this designation *was* submitted to the proper entity, Lisa Opheim's employer. *Id.*; *see also* Appendix at 71. Also unlike the situation in *Matschiner*, Opheim promptly provided the November 16, 2010, designation after discovering it, and submitted verification from Lisa Opheim's employer that the designation had been properly submitted under the terms of the plan. Appendix at 125 and 131. Finally, unlike the situation in *Matschiner*, the policy at issue, here, *did not* expressly provide that Standard is not liable for further payment of amounts paid under an earlier designation before it received a later designation. *Compare Matschiner*, 622 F.3d at 889.

Second, Standard's failure to pay benefits in accordance with the November 16, 2010, designation was an abuse of discretion, because the Opheims did everything the plan required to effectuate the change of beneficiary to Opheim, while Standard did not do what the plan documents required to determine the proper beneficiary. As noted, above, the plan documents at issue, here, expressly provided that the designation would "take effect on the date it is delivered to the Policyholder or Employer." Appendix at 71. Thus, the fact that the November 16, 2010, designation was not in Standard's file does not establish compliance with the "plan documents rule"—indeed, that fact is irrelevant—because that rule requires Standard to act "in accordance with the documents and instruments" of the plan and, more specifically, to "hew[] to the directives of the plan documents," not merely to act in compliance with the documents in its file. *Matschiner*, 622 F.3d at 887 (quoting § 1104(a)(1)(D) and *Kennedy*, 555 U.S. at 301). Here, the "directives of the plan documents" were to treat a designation submitted to the employer as effective.

Furthermore, Peoples Bank, the employer with responsibility to receive a beneficiary designation for the designation to become effective, identified Opheim as the beneficiary of *all* the life insurance benefits in its claim information concerning Lisa Opheim's death. *See* Appendix at 223. Standard acted arbitrarily in not investigating

why the employer's identification of the beneficiary did not match the one in Standard's file from the October 15, 2009, designation. Yet, even without such notice from the employer suggesting a possible change of beneficiary, Standard acted arbitrarily and capriciously by not verifying with either the employer or the policy holder that no change of beneficiary designation had been received, *before paying benefits*, where the plan documents designated the employer or the policy holder, rather than Standard, as the proper entities to receive an effective beneficiary designation. *Cf. Matschiner*, 622 F.3d at 887 ("Hartford's attempt to obtain more information from defunct [former employer of the deceased] went unanswered.").

Standard also abused its discretion when it failed to take any action to remedy its payment to the "wrong" beneficiary, even after a senior life benefits analyst for Standard reviewed the situation and admitted that Standard had paid the "wrong" beneficiary, and acknowledged that this was not the "typical" situation in which such an error might occur. Appendix at 126. Under the "plan documents rule," Standard was not simply "an impartial stakeholder [who was] not required to determine who among competing claimants has a valid right to these funds," as Ms. Smothers indicated in her letter stating that Standard would consider the matter "closed." *Id*. at 112. Rather, Standard was obligated to pay benefits "in accordance with the documents and instruments" of the plan, *Matschiner*, 622 F.3d at 887 (quoting § 1104(a)(1)(D) and *Kennedy*, 555 U.S. at 301), and did not have a disclaimer in the plan documents that would shield it from that obligation, if presented with a later designation after benefits had been paid, as in *Matschiner*. *Id*. at 889.

It is precisely because Standard did not comply with the "plan documents rule" that it may face "double liability." *Id*. at 887 (explaining that the virtues of the "plan documents rule" include "simple administration, avoiding double liability, and ensuring

that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." (quoting *Kennedy*, 555 U.S. at 301)).

In short, Standard's decision not to pay the additional term life insurance benefits to Opheim pursuant to the November 16, 2010, designation was *not* "supported by . . . substantial evidence in the materials considered by the administrator," but contrary to those materials. *Waldoch*, 757 F.3d at 830 (quoting *King*, 414 F.3d at 999). Opheim is entitled to payment of Lisa Opheim's additional term life insurance benefits from Standard pursuant to the November 16, 2010, beneficiary designation, and Standard's failure to make that payment to him was an abuse of discretion. Standard must now pay those benefits, in the amount of $65,000, to Opheim.

### 2. *Opheim's equitable relief claim*

Opheim's second claim is for equitable fraud, based on Standard's alleged misrepresentation of facts concerning the rightful beneficiary of those benefits. As explained, above, under the preemptive force of ERISA, this claim is one for equitable relief. I find it unnecessary to reach this claim or the parties' arguments about whether or not it presents a proper equitable claim under ERISA, where Opheim has obtained complete relief on his denial of benefits claim.

### 3. *Attorney fees*

#### a. *Arguments of the parties*

Opheim also argues that, if I order Standard to pay him the claimed benefits, I should also order Standard to pay for the attorney fees that Opheim incurred seeking to recover those benefits. He contends that, notwithstanding Standard's supposed "good faith" in demanding return of the benefits initially paid to him, Standard acted in bad faith when he demonstrated that Standard's determination that Stevens was the proper beneficiary was wrong, because the November 16, 2010, beneficiary designation was effective, and asked Standard to correct the error. He argues that bad faith is apparent,

because Standard chose to try to wash its hands of the matter, even after a senior life benefits analyst who reviewed the case conceded that Standard had paid benefits to the wrong beneficiary and that this was not a typical situation of prior payment of benefits. Opheim also argues that Standard has the ability to pay attorney fees, and that such an award would help to deter other insurers from just wiping their hands in similar situations, in disregard of whether the payment was made to the rightful beneficiary. Finally, he argues that the merits of his position are strong, while the merits of Standard's position are weak, because Standard has simply refused to fulfill its obligations under the plan.

Standard argues that, for the same reason Opheim's claims should fail, his request for attorney fees should also fail. Standard disputes that Opheim can be a prevailing party. Standard also argues that it did not act in bad faith, because, for example, it did not deny liability altogether. Standard contends that an award of attorney fees to Opheim would reward potential beneficiaries who fail to exercise diligence during the claim review process, but also contends that the case uniquely impacts Opheim, not all participants or beneficiaries.

### b. Applicable standards

As the Eighth Circuit Court of Appeals recently explained,

> ERISA Section 502(g)(1) . . . permits "the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We review for an abuse of discretion a district court's denial of an award for attorney's fees and costs. *McDowell v. Price*, 731 F.3d 775, 783–84 (8th Cir. 2013). But, as a threshold matter, "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). This standard is not

satisfied "by achieving trivial success on the merits or a purely procedural victor[y]." *Id.* (alteration in original) (quoting *Ruckelshaus*, 463 U.S. at 688 n.9, 103 S.Ct. 3274). But the standard is satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (alteration in original) (quoting *Ruckelshaus*, 463 U.S. at 688 n.9, 103 S.Ct. 3274).

*Thole v. U.S. Bank, Natl Assn*, 873 F.3d 617, 630 (8th Cir. 2017).

In deciding whether to award fees in ERISA cases, courts are guided by the five factors set forth in *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir.1984) (per curiam). *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1184 (8th Cir. 2014); *see also Dakotas and Western Minn. Elec. Indus. Health and Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1105 (8th Cir. 2017) ("[W]e urged district courts to apply the non-exclusive factors outlined in *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984), and other relevant considerations as general guidelines for determining when a fee is appropriate." (quoting *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc)), *petition for cert. filed*, No. 17-863 (Dec. 13, 2017). In *Westerhaus*, the court explained:

In exercising [its] discretion [in whether to award attorney fees], a court should consider the following factors:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a

> significant legal qeustion [sic] regarding ERISA itself;
> and (5) the relative merits of the parties' positions.

> *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266
> (5th Cir. 1980).

*Westerhaus*, 749 F.2d at 495-96

### c.    *Analysis*

Contrary to Standard's contentions, Opheim meets the threshold requirement for an award of attorney fees, some degree of success on the merits. *Thole*, 873 F.3d at 630. Without the need to indulge in any lengthy inquiry, it is clear that Opheim has prevailed on the merits of his claim by recovering *all* the benefits he claimed Standard had improperly denied him. *Id.*

Furthermore, the weight of the *Westerhaus* factors is strongly in favor of an award of attorney fees to Opheim. *First Agency, Inc.*, 865 F.3d at 1105; *Nichols*, 739 F.3d at 118. As to Standard's degree of culpability or bad faith, I have already concluded that the Opheims did what the plan documents required, but Standard acted arbitrarily—and I now add, in bad faith. Specifically, Standard failed to investigate the proper beneficiary, before paying the benefits to Stevens. Standard also attempted to wash its hands of the matter, contrary to its obligations under the plan terms. Standard clearly has the ability to satisfy an award of attorney fees, and Standard expressly concedes as much. Contrary to Standard's contentions, an award of attorney fees against Standard could deter other plan administrators acting under similar circumstances from such arbitrary and bad faith conduct and, instead, encourage them to comply strictly with the plan documents, as required by the "plan documents rule." Finally, considering the relative merits of the parties' positions, I have already concluded that the Opheims did what they were required to do under the plan, while Standard did not, and Standard's arguments to the contrary do not bear close scrutiny.

Under these circumstances, Opheim is entitled to an award of attorney fees against Standard. Opheim is directed to submit a fee application in compliance with applicable local rules.[4]

---

[4] If an award of attorney fees is appropriate, courts utilize two main approaches to determine the reasonableness of the amount of the attorney fees requested:

> "Under the lodestar methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." [*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)]. "Another method, the percentage of the benefit approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id*. at 244-45. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorneys fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). To determine the reasonableness of a fee award under either approach, district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974). *See [Heyer v.] Buckley*, 849 F.3d [395,] 399 [(8th Cir. 2017)] (approving district court's reliance on *Johnson* factors when awarding fee based on percentage-of-benefit method); *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 966 & n.4 (8th Cir. 2012) (approving reliance on *Johnson* factors when using lodestar method).

*Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). I will consider these factors, in a

(Footnote continued . . .

### B. Standard's Third-Party Claim

In its Third-Party Complaint, Standard asserts claims for a constructive trust and unjust enrichment against Stevens, if it is compelled to pay benefits to Opheim. Standard has briefed only the former claim, thus waiving the latter. *See, e.g., White v. Jackson*, 865 F.3d 1064, 1076 n.1 (8th Cir. 2017) (a party waives a claim by providing no "meaningful argument" on it in the party's opening brief). Stevens contends that Standard is not entitled to a constructive trust.

### 1. Standard's claim for a constructive trust

#### a. Arguments of the parties

Standard contends that its claim for a constructive trust is appropriate equitable relief under ERISA. Standard contends that it seeks the return of particular funds, or a specific thing, the $65,000 in additional term life insurance benefits, that is indisputably in Stevens's possession, either as cash or traceable items that were purchased from those funds. In short, Standard argues that it is seeking typical equitable relief permitted under ERISA.

Stevens contends that Standard's claim is legal, not equitable, so that it is not authorized by ERISA. He also contends that Standard waived its right to seek the $65,000 by not investigating and seeking review within 60 days of the payment of the benefits. He contends, further, that Standard's claim is barred by the doctrine of laches. Indeed, Stevens asserts that he is entitled to an award of his attorney fees for defending against Standard's claim.[5]

---

separate ruling, after Opheim submits an appropriate fee application and Standard has had the opportunity to respond.

[5] In the "Wherefore" clause of his Answer to Standard's Third-Party Complaint, Stevens prayed that Standard's claims against him be dismissed "and that all costs disbursements and reasonable attorney's fees be taxed to [Standard]." Answer To Third Party-Complaint (docket no. 11), 5.

### b.    *Applicable standards*

ERISA plan trustees and other ERISA fiduciaries "are authorized to bring an action under § 502(a)(3) [29 U.S.C. § 1132(a)(3)] to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." *Dakotas & W. Minn. Elect. Indus. Health and Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1101 (2017), *petition for cert. filed*, Dec. 15, 2017 (No. 17-863). It is true that "[c]onstructive trusts and equitable liens are the most common forms of restitution in equity." *Halbach v. Great-West Life & Annuity Ins. Co.*, 561 F.3d 872, 883 (8th Cir. 2009) (quoting *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 596 (8th Cir. 2005)). Even so, not all forms of "equitable relief" or even all claims for an "equitable trust" are available under ERISA.

Rather, the Eighth Circuit Court of Appeals recently addressed Supreme Court cases distinguishing equitable claims available under ERISA from those not available, as follows:

> The comprehensive nature of § 502(a)'s remedies has made the Supreme Court "reluctant to tamper with an enforcement scheme crafted with such evident care." *[Mass. Mut. Life Ins. Co. v.] Russell*, 473 U.S. [134,] 147 [(1985)]; *see Admin. Comm. of Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan v. Shank*, 500 F.3d 834, 837 (8th Cir. 2007). Thus, in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), the Court held that "equitable relief" in § 502(a)(3) is limited to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." In *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), an ERISA plan gave the plan a right to recover benefits paid if the beneficiary recovered from a third party. The plan brought a § 502(a)(3) action to enforce this provision by ordering a beneficiary to pay settlement proceeds from her general assets. The Court denied relief, rejecting the

contention that this was a claim for equitable restitution within the purview of § 502(a)(3) because "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' ... since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* (quotation omitted).

By contrast, in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362–63, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), the Court held that a § 502(a)(3) claim to recover restitution from a specifically identifiable fund was a claim for "appropriate equitable relief" because recovery of a specific asset is appropriately characterized as equitable restitution. Most recently, in *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, ––– U.S. ––––, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016), where the plan allowed a settlement fund to be dissipated before suing to recover benefits it had paid, the Court followed *Knudson* and denied § 502(a)(3) relief because "a personal claim against the defendants' general assets ... is a *legal* remedy, not an equitable one." The Court explained that, "[t]o determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought, we turn to standard treatises on equity, which establish the basic contours of what equitable relief was typically available in premerger equity courts." *Id.* at 657 (quotation omitted).

*First Agency, Inc.*, 865 F.3d at 1101–02.

Similarly, the court had previously explained,

In *Knudson*, an ERISA plan sued a participant for restitution under § 502(a)(3) to recover benefits paid before a settlement of a personal injury lawsuit between the participant and an auto manufacturer. 534 U.S. at 207–08, 122 S.Ct. 708. . . . The Court . . . distinguished legal claims for restitution from equitable claims. A plaintiff could seek

restitution at law when he "could *not* assert title or right to possession of particular property, but ... he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id*. at 213, 122 S.Ct. 708 (internal quotation omitted). Restitution was available at equity, and thus available under § 502(a)(3), only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to *particular* funds or property in the defendant's possession." *Id*. (emphasis added). In *Knudson*, the settlement proceeds were paid not to the plan participant, but to his attorney and to a trust for medical care. Since the plan participant never had the funds in his possession, the Supreme Court held that the ERISA plan's claim for restitution was legal rather than equitable. *Id*. at 214, 122 S.Ct. 708.

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Student Assur. Servs., Inc.*, 797 F.3d 512, 515 (8th Cir. 2015). Similarly, a plan administrator's "claims for restitution and for an equitable lien or a constructive trust are legal rather than equitable claims, [if] the fund seeks compensation out of the general assets of the [defendant], and does not assert the right to particular property in the possession of the [defendant]." *Id*.

In short, the Eighth Circuit Court of Appeals has stated that "whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant" is a relevant factor. *Halbach* 561 F.3d at 883 (internal quotation marks and citations omitted). More specific requirements, however, are (1) "whether the money sought is specifically identifiable as belonging in good conscience to the plaintiff"; (2) whether the money "can clearly be traced to particular funds or property in the defendant's possession"; (3) whether the funds "are due the plaintiff under the terms of the plan"; and (4) whether the funds "are within the defendant's possession

and control." *Id.* (internal quotation marks and citations omitted).[6] Finally, "[w]hen funds are traceable, the district court must limit the recovery by imposing a constructive trust over only the transferred funds; it may not award restitution of a sum certain or find personal liability, both of which are impermissible legal remedies under section 1132(a)(3)." *Id.* (internal quotation marks and citations omitted).

### c.    *Analysis*

Contrary to Standard's arguments, Standard does *not* seek the return of "particular funds" or a "specific thing," simply by seeking return of the $65,000 in additional term life insurance benefits that were paid to Stevens in April 2015 (or traceable items purchased from those funds), *i.e.*, its claim fails the second requirement, above. *Id.* There simply is no "specifically identifiable" or "particular" fund over which Standard seeks an equitable trust. Rather, Standard simply seeks the amount of money it paid Stevens from Stevens *personally* or from his *general assets*. *See First Agency, Inc.*, 865 F.3d at 1102 (explaining "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty" (quoting *Knudson*, 534 U.S. at 210)); *Student Assur. Servs., Inc.*, 797 F.3d at 515 (holding that the claim was "legal," not "equitable," because "the fund seeks compensation out of the general assets of the [defendant], and does not assert the right to particular property in the possession of the [defendant]"). Indeed, the Sixth Circuit Court of Appeals rejected a claim for an equitable trust based on identification of the same purported "particular fund" that Standard has identified, here:

---

[6] Standard does not contend that it is entitled to an "equitable trust" by consent and has pointed to no plan terms that would indicate such consent.

Central States tries to portray its restitution as equitable, insisting that the requested funds "are specifically identifiable" because "[t]he funds are measured by the amount of [the] bills Central States paid." Central States Br. 40. But a money judgment does not become equitable merely because its size is known or otherwise identifiable in that way. *It is the fund, not its size, that must be identifiable. Nor does the match between the size of the judgment and the size of the bills pull an identifiable fund into the picture.* No matter how the district court figured out the size of the monetary recovery, the recovery continues to come out of Guarantee Trust's assets in general, not out of any fund in particular.

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960–61 (6th Cir. 2014) (emphasis added).

Standard's claim for an equitable trust over the benefits that it erroneously paid Stevens is denied, because that claim seeks "legal" relief not available under ERISA.[7]

### 2. *Attorney fees*

I also conclude that Stevens is entitled to his reasonable attorney fees for defending against Standard's third-party claim. Stevens, like Opheim, meets the threshold requirement for an award of attorney fees, some degree of success on the merits. *Thole*, 873 F.3d at 630. Without the need to indulge in any lengthy inquiry, it is clear that Stevens has prevailed on the merits by defeating Standard's claim in its entirety on the merits. *Id.*

Furthermore, the weight of the *Westerhaus* factors favors an award of attorney fees to Stevens. *First Agency, Inc.*, 865 F.3d at 1105; *Nichols*, 739 F.3d at 118. As to Standard's degree of culpability or bad faith, I reiterate that Standard acted in bad faith

---

[7] Again, to the extent that this conclusion imposes "double liability" on Standard, that "double liability" is the result of Standard's failure to follow the "plan documents rule."

by failing to investigate the proper beneficiary, before paying the benefits to Stevens, and in attempting to wash its hands of the matter, contrary to its obligations under the plan terms. Standard clearly has the ability to satisfy an award of attorney fees. Again, an award of attorney fees against Standard could deter other plan administrators acting under similar circumstances from such arbitrary and bad faith conduct and, instead, encourage them to comply strictly with the plan documents, as required by the "plan documents rule." Had Standard done so, Stevens likely would *never* have been embroiled in this lawsuit. Finally, considering the relative merits of the parties' positions, Standard's arguments that its claim for a constructive trust is authorized by ERISA do not bear close scrutiny.

Under these circumstances, Stevens, like Opheim, is entitled to an award of attorney fees against Standard. Stevens is also directed to submit a fee application in compliance with applicable local rules.

### III.    CONCLUSION

Upon the foregoing,

1.    On plaintiff Opheim's claim that Standard's decision not to pay the additional term life insurance benefits to him was an improper denial of benefits, I conclude that Standard's failure to do so was arbitrary, capricious, and an abuse of discretion, and **Standard must now pay those benefits, in the amount of $65,000, plus interest, to Opheim, pursuant to the November 16, 2010, beneficiary designation**;

2.    Plaintiff Opheim's claim of equitable fraud is **denied as moot**;

3.    Plaintiff Opheim is **entitled to an award of reasonable attorney fees** against Standard.

a.    Opheim is directed to submit a fee application, and

   b.  Standard shall have time to resist the reasonableness of the attorney

fees claim,

all in compliance with applicable local rules.

   Furthermore,

   1.  Standard is entitled to **no relief** on its third-party claim for an equitable trust

against Stevens;

   2.  Standard's third-party claim for unjust enrichment against Stevens is **denied**

**as waived**;

   3.  Third-party defendant Stevens is **entitled to an award of reasonable**

**attorney fees** against Standard.

   a.  Stevens is directed to submit a fee application, and

   b.  Standard shall have time to resist the reasonableness of the attorney

fees claim,

all in compliance with applicable local rules.

   **IT IS SO ORDERED**.

   **DATED** this 9th day of January, 2018.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA